**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FIRST BUSINESS SPECIALTY FINANCE, LLC, a Wisconsin limited liability company, | ) | |
| Plaintiff, | ) | |
| v. | ) | 25 C 15802 |
| MARCUS TREIBER, individually, ERYN APPELL, individually, and EMT HOLDINGS LLC, a Nevada limited liability company, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants Marcus Treiber, Eryn Appell, and EMT Holdings LLC's ("EMT") motion to dismiss Plaintiff First Business Specialty Finance, LLC's ("FBSF") complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## BACKGROUND

This cause of action arises out of an August 8, 2025 Agreement for Sale and Purchase ("Factoring Agreement") between FBSF and EMT. The following facts are taken from the complaint and are presumed true for purposes of this motion. All reasonable inferences are drawn in FBSF's favor.

FBSF is in the factoring business, in which it acts as a "Factor" or "Purchaser" and contracts to buy commercial accounts receivable ("Accounts") from a "Factoring Client." The Factoring Client's customers, to whom the Factoring Client has provided goods or services and who owe on Accounts, are identified in the factoring industry as "Account Debtors." When a Factor purchases Accounts, it advances funds to the Factoring Client for the purchased Accounts, the Factoring Client invoices its Account Debtors, the Account Debtors are provided "Notices of Assignment" directing them to pay the Factor, and the Factor collects directly from those Account Debtors.

Defendant Treiber is EMT's Chief Executive Officer ("CEO"), and Defendant Appell, Trieber's wife, is EMT's Chief Operating Officer ("COO"). Appell's role as COO gives her responsibility for day-to-day operations, including financial operations and bank accounts. Both Treiber and Appell are managing members of EMT.

In and around the summer of 2025, Treiber represented EMT to FBSF as a company that provides investigative services, location systems, tactical communications, and enterprise IT and cloud services, serving Account Debtors who purchased its services. Because of those representations, FBSF entered into the Factoring Agreement, which Treiber and Appell signed on August 8, 2025, in their capacities as members of EMT. The Factoring Agreement set up an ongoing arrangement between FBSF and EMT in which EMT could sell FBSF client Accounts, and FBSF would be entitled to collect from the clients on those Accounts. In the Factoring Agreement, EMT promised that it would only sell accounts to FBSF that were

eligible to collect on and that it would submit supporting documentation for each Account showing the same.

In conjunction with the Factoring Agreement, Trieber also signed a Validity Guaranty ("Guaranty") guaranteeing that (1) any Accounts EMT sold to FBSF would be eligible for collections, (2) that EMT would provide supporting documentation of eligibility, and (3) that EMT would not direct payments from clients away from FBSF. When Treiber and Appell executed the Factoring Agreement, they failed to disclose that litigation was pending against EMT for EMT's default under a financing arrangement with Suncoast Funding Group.

On September 17, 2025, EMT sold FBSF Accounts related to invoices it had with its clients CACI International, Inc. ("CACI Invoices"), and the Department of Veterans Affairs ("VA Invoices"). According to FBSF, some of the CACI Invoices were ineligible to collect on because EMT had already collected the funds from CACI and/or later collected the funds from CACI after selling the CACI Invoices to FBSF. Additionally, FBSF alleges that EMT sold FBSF a fake invoice. FBSF further alleges that the VA Invoices were ineligible to collect on because the invoices were contested by the Department of Veterans Affairs. Then, after selling FBSF these invoices, EMT refused to provide requested supporting documentation to FBSF relating to the various Accounts, and Trieber instructed clients to redirect their payments on these invoices away from FBSF.

FBSF unsuccessfully demanded payment on November 4, 2025, and alleges

damages of at least $1,157,745.61 as of December 22, 2025.

Based on the foregoing, FBSF filed this lawsuit. Its five-count complaint brings claims for breach of contract against EMT (Count I), breach of guaranty against Treiber (Count II), alter ego/piercing the corporate veil against Treiber and Appell (Count III), common law fraud against all Defendants (Count IV), and civil RICO against Treiber and Appell (Count V). Defendants move to dismiss the breach of guaranty, fraud, and civil RICO claims under Federal Rule of Civil Procedure 12(b)(6).

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotes omitted). "This means that the complaint must offer factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Farhan v. 2715 NMA LLC*, 161 F.4th 475, 482 (7th Cir. 2025) (cleaned up). The Court will accept "well-pleaded facts in the complaint as true and draw reasonable inferences in plaintiffs' favor—but [will] not presume the truth of legal conclusions and conclusory allegations." *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 475 (7th Cir. 2024). For these reasons, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Orr v. Shicker*, 147 F.4th

734, 741 (7th Cir. 2025) (quoting *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021)).

A party alleging fraud or mistake "must state with particularity the circumstances constituting [the] fraud or mistake." Fed. R. Civ. P. 9(b). "While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading 'ordinarily requires describing the who, what, when, where, and how of the fraud.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (quoting *Anchorbank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)). The particularity requirements of Rule 9(b), however, "must be read in conjunction with Rule 8, which requires a short and concise pleading." *PharMerica Chi., Inc. v. Meisels*, 772 F. Supp. 2d 938, 955 (N.D. Ill. 2011) (quoting *Gelco Corp. v. Duval Motor Co.*, 2002 WL 31875537, at *6 (N.D. Ill. 2002)). In a case involving multiple defendants, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).

## **DISCUSSION**

Defendants move to dismiss FBSF's breach of guaranty, fraud, and RICO claims. The Court addresses each claim in turn.

## I. Breach of Guaranty (Count II)

Defendants argue FBSF's breach of guaranty claim against Treiber should be dismissed because, as pleaded, it would allow double recovery for the same harm. In Count I, FBSF alleges that EMT breached the Factoring Agreement and seeks damages of at least $1,157,745.61. In Count II, FBSF alleges that Treiber breached the Guaranty and as a result FBSF was damaged in the same amount as alleged in Count I. Both claims represent distinct legal obligations arising from separate promises. FBSF has expressly stated that it is not seeking double recovery; it seeks to hold Trieber and EMT jointly and severally liable—in the event of judgment in FBSF's favor on both counts, collection would be limited to one satisfaction. The Court declines to dismiss Count II at this time. The Court may revisit this issue later in the proceedings, but for now, FBSF is entitled to pursue both claims to establish liability against EMT and Treiber, and it will be unable to secure a double recovery for the single, overlapping injury.

## II. Fraud (Count IV)

Defendants next accuse FBSF of jumbling together different theories of fraud—fraudulent inducement, fraudulent misrepresentation, fraudulent concealment—under one general fraud claim without alleging the elements of any specific fraud theory with the requisite particularity. Defendants further argue the fraud claim is duplicative of the breach of contract claim.

In the complaint, FBSF alleges, among other things, that Defendants "committed fraud by inducing FBSF under false pretenses and misrepresentations to enter into the

Factoring Agreement, by concealing financial records, selling to FBSF the Paid CACI Invoices for which EMT had already been paid by CACI, selling Invoice EMT35-$174,567.00 without any basis for repayment, redirecting Account Debtor payments away from FBSF, selling ineligible VA Invoices to FBSF, and misusing advances for the personal benefit of Marcus Treiber and Eryn Appell." Dkt. # 1, ¶ 92. FBSF argues that its complaint states claims for "(i) fraudulent inducement based on pre-contract misrepresentations, (ii) fraudulent misrepresentations made during the course of performance through specific invoices and payment requests, and (iii) fraudulent concealment based on Defendants' failure to disclose the diversion of funds despite partial disclosures and superior knowledge." Dkt. # 25, at 4.

The elements of fraudulent inducement are essentially the same as those for fraudulent misrepresentation. Under Illinois law, to state a claim for fraudulent inducement, a plaintiff must allege: "(1) a false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012) (internal quotation marks omitted). Similarly, to prevail on a claim of fraudulent misrepresentation, the plaintiff must establish: "(1) a false statement or omission of material fact; (2) knowledge or belief of the falsity by the party making it; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from

such reliance." *PharMerica Chi.*, 772 F. Supp. 2d at 957 (quoting *Weidner v. Karlin*, 402 Ill. App. 3d 1084, 1087 (2010)). Moreover, the plaintiff's reliance must be reasonable. *Id.* (citing *Minch v. George*, 395 Ill. App. 3d 390, 399 (2009)).

As an initial matter, FBSF identifies no specific, independent conduct by Appell, other than signing the Factoring Agreement. Instead, she is lumped in with EMT and Treiber through generalized allegations of misconduct. *See Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (rejecting complaint that lumped together multiple defendants because the complaint was "bereft of any detail concerning who was involved in each allegedly fraudulent activity"). Throughout the complaint, FBSF alleges that fraudulent acts were committed by either "EMT, acting through Marcus Treiber in concert with and for the benefit of Eryn Appell" or "EMT, Marcus Treiber, in concert with and for the benefit of Eryne Appell." *See*, *e.g.*, Dkt. # 1, ¶¶ 31, 32, 38, 40, 45, 54, 56, 93, 94, 98. Allegations such as these hardly provide Appell with fair notice of her role in the alleged fraudulent scheme. *See Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (providing "fair notice" to each defendant is "the most basic consideration underlying Rule 9(b)" (cleaned up)). That Appell is alleged to be involved in EMT's day-to-day operations is not enough to support generic claims of fraudulent activity. Because Appell's involvement in the alleged fraud is not pleaded with the requisite specificity, the fraud claims against her are dismissed without prejudice. *See Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) (when a "complaint accuses multiple

defendants of participating in the scheme to defraud, the plaintiffs must take care to identify which of them was responsible for the individual acts of fraud").

Defendants also argue that the Court should reject FBSF's attempt to recast into a fraud claim its allegations of breach of contract. The Court agrees with Defendants that, at first glance, much of the conduct that forms the basis of FBSF's fraud claims is duplicative of its breach of contract claims. In fact, in setting forth various misrepresentations made by Defendants, FBSF explicitly cites duties owed under the Factoring Agreement or Guaranty and sections of the Factoring Agreement that were violated. *See* Dkt. # 1, ¶ 93.

Under Illinois law, "a fraud claim cannot rest on the same ground as a claim of breach of contract." *Five-Star AudioVisual, Inc. v. Unique Bus. Sys. Corp.*, 769 F. Supp. 3d 840, 852 (N.D. Ill. 2025). Put differently, "'a breach of contractual promise, without more, is not actionable' . . . under a theory of common law fraud." *GuideOne Mut. Ins. v. Good Shepherd Lutheran Church*, 2021 WL 3077658, at *4 (N.D. Ill. 2021) (quoting *Avery v. State Farm Mut. Auto. Ins.*, 216 Ill. 2d 100, 169 (2005)). Instead, where fraud is pleaded in a contractual setting, a plaintiff must "identify [a] fraudulent act distinct from the alleged breach of contract." *Greenberger v. GEICO Gen. Ins.*, 631 F.3d 392, 401 (7th Cir. 2011); *see also GuideOne*, 2021 WL 3077658, at *4 ("In a contractual setting, a plaintiff pleading fraud must show more than 'the mere fact that a defendant promised something and then failed to do it.'" (quoting *Avery*, 216 Ill. 2d at 169)).

"Yet courts have recognized that where a defendant creates a façade of compliance in order to frustrate the plaintiff's abilities to enforce a contract the conduct goes beyond breach of contract and becomes indicative of fraud." *Albany Condo. Ass'n v. Republic Servs., Inc.*, 2025 WL 2644577, at *9 (N.D. Ill. 2025) (cleaned up); *see also United States ex rel. Milazzo v. Joel Kennedy Constructing Corp.*, 584 F. Supp. 3d 595, 634 (N.D. Ill. 2022) ("[plaintiff's fraud claim] is not predicated on [the defendant's] failure to comply with the contractual residency requirements, but on the defendants' scheme to obscure their noncompliance through the submission of false or incomplete payroll certifications"). Such a façade of compliance was allegedly at play here—FBSF alleges that Defendants knowingly submitted ineligible invoices, duplicate invoices, and invoices that had already been paid, while at the same time representing to FBSF that everything they submitted was on the up-and-up and in compliance with their contractual obligations. In essence, Defendants pretended to comply with their contractual obligations and engaged in conduct designed to mask their deceptive acts. After contracting, Defendants collected payments on invoices already sold to FBSF and refused to forward that payment to FBSF. They also actively redirected payments away from FBSF. These allegations go beyond a mere failure to comply with contractual terms and suggest something more nefarious was afoot.

Additionally, FBSF alleges Defendants made fraudulent misrepresentations prior to the execution of the Factoring Agreement. A fraud claim premised on alleged false statements made prior to the closing of a contract is separate and apart from the

defendants' breach of an alleged contractual obligation. *Five-Star AudioVisual*, 769 F. Supp. 3d at 854; *see also Boyd Group (U.S.) Inc. v. D'Orazio*, 2015 WL 3463625, at *8–9 (N.D. Ill. 2015) (holding that *Greenberger* did not apply to a fraud claim "premised on alleged false statements that were made prior to the closing" of the agreement because they were "fraudulent misrepresentations separate and apart" from the alleged breach of contract).

Unfortunately for FBSF, though, the complaint fails to clear the high pleading bar of Rule 9(b). Again, to properly plead fraud, FBSF needs "the time, the place, and the content of the misrepresentation[s]." *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006); *Rocha*, 826 F.3d at 911 (finding that this requirement includes the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff) (internal quotations omitted). While FBSF adequately pleads a general timeframe, the complaint lacks specifics regarding how any alleged misrepresentations were made, and does not identify in what capacity Treiber was acting when making misrepresentations.

FBSF's fraudulent concealment claim suffers from similar deficiencies. "Fraudulent concealment occurs when a defendant intentionally induces a false belief through the concealment of a material fact while under a duty to speak." *Nartey v. Franciscan Health Hosp.*, 2 F.4th 1020, 1026 (7th Cir. 2021) (citing *Abazari v. Rosalind Franklin Univ. of Med. & Sci.*, 2015 IL App (2d) 140952, ¶ 27). "A duty to disclose

may be based on a fiduciary relationship or a relationship of trust and confidence where defendant is in a position of influence and superiority over plaintiff. Or it may arise when a defendant tells a half-truth and then becomes obligated to tell the full truth." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 737 (7th Cir. 2017) (cleaned up). Although mere silence in a business transaction does not amount to fraud, *Heider v. Leewards Creative Crafts, Inc.*, 245 Ill. App. 3d 258, 269 (1993), "[s]ilence accompanied by deceptive conduct or suppression of material facts results in active concealment and amounts to fraud," *Settlement Funding, LLC v. Brenston*, 2013 IL App (4th) 120869, ¶ 42. While FBSF alleges that EMT and Treiber "knowingly made false statements or omissions of material fact," Dkt. # 1, ¶ 94, it largely does not identify any specific omissions or provide any details about the who, when, and how of the concealment.

Additionally, "[t]he special relationship threshold is a high one." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 572 (7th Cir. 2012). "[T]he defendant must be clearly dominant, either because of superior knowledge of the matter derived from overmastering influence on the one side, or from weakness, dependence, or trust justifiably reposed on the other side." *Id*. (cleaned up); *see also In re Boeing 737 MAX Pilots Litig.*, 638 F. Supp. 3d 838, 863 (N.D. Ill. 2022). Given the high bar, Illinois courts have "rarely found a special trust relationship to exist in the absence of a more formal fiduciary one." *Wigod*, 673 F.3d at 571. FBSF offers no response to Defendants' argument that the complaint fails to allege a special or fiduciary relationship. And while FBSF does allege that Defendants failed to disclose pending

litigation against EMT when executing the Factoring Agreement, it doesn't explain why EMT was under a duty to disclose that information.

Ultimately, FBSF's fraud claims must be dismissed because they are not pleaded with the requisite specificity. The dismissal is without prejudice, however, and FBSF is granted leave to file an amended complaint that adds more substance to the allegations of fraud. FBSF needs to identify specific misrepresentations and omissions, how they were made, who made them and in what capacity, and when they were made. FBSF should keep in mind that Rule 9(b) requires that each defendant be informed of the fraudulent conduct attributed to him; FBSF may not discharge that obligation by attributing conduct to Defendants as a group. *Vicom*, 20 F.3d at 778. And, to the extent FBSF wishes to plead fraudulent misrepresentation, fraudulent inducement, and fraudulent concealment, it should take care to set out those claims in separate counts to avoid any confusion.

**III. Civil RICO (Count V)**

RICO provides a civil cause of action for plaintiffs who have been "injured 'by reason of' a defendant's RICO violation." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 456 (2006) (citation omitted). To state a claim under Section 1962(c), a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). In civil RICO cases, a plaintiff must also show injury to his business or property "by reason of" the RICO violation—that is, he must establish both "but for" and proximate causation. 18

U.S.C. § 1964(c); *Ratfield v. U.S. Drug Testing Laby's, Inc.*, 140 F.4th 849, 852 (7th Cir. 2025). Defendants argue FBSF fails to plead the underlying fraud of its RICO claim with the requisite particularity and fails to plead sufficient facts establishing a pattern of racketeering.

Even assuming that FBSF adequately pleaded the requisite predicate acts with specificity[1], its RICO claim fails at the "pattern" requirement. "A pattern [of racketeering activity] requires the commission of at least two predicate acts of racketeering activity occurring within ten years of each other." *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011). However, "while two acts are necessary, they may not be sufficient." *Sedima,* , 473 U.S. at 496 n.14. "The pattern requirement is difficult to define and requires courts to use common sense." *Meyer Material Co. v. Mooshol*, 188 F. Supp. 2d 936, 941 (N.D. Ill. 2002).

To establish a pattern, a plaintiff must show that the predicate acts are related and that they "amount to or pose a threat of continued criminal activity"—the so-called "continuity plus relationship" test. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Relatedness in this case is not seriously in dispute; the alleged acts

---

[1] Defendants are correct that general allegations of "repeated and continuing wire fraud" are insufficient. Should FBSF choose to amend its RICO claim, it should keep in mind that "Plaintiffs alleging mail and wire fraud as predicate acts to their RICO claims must allege 'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 773 (N.D. Ill. 2019) (quoting *Vicom*, 20 F.3d at 777).

share a purpose, a method, the same participants, and the same victim. Continuity, however, is another matter. Continuity may be demonstrated through a closed-ended or open-ended theory.

To plead open-ended continuity, a plaintiff must allege specific facts that show a threat of repetition in the future. *See H.J. Inc.*, 492 U.S. at 241–42. Open-ended continuity does not exist when the alleged scheme has a natural ending point because the plaintiff cannot show a continuing threat of criminal activity. *Roger Whitmore's Auto. Servs., Inc. v. Lake Cnty., Ill.*, 424 F.3d 659, 674 (7th Cir. 2005). And conclusory allegations that a continuing threat exists are insufficient. *Vicom*, 20 F.3d at 783 ("A threat of continuity cannot be found from bald assertions such as 'James Elliot continues his racketeering activities.'"); *Guar. Residential Lending, Inc. v. Int'l Mortg. Ctr., Inc.*, 305 F. Supp. 2d 846, 860 (N.D. Ill. 2004) ("Such conclusory allegations . . . are not sufficient to allege open-ended continuity, specific facts must support such a conclusion." (collecting cases)).

Because the scheme has ended insofar as it was directed at FBSF, FBSF is left to argue that its "allegation that Defendants engaged in similar conduct with another financing counterparty [Suncoast Funding] further reinforces the inference that the racketeering activity was not an isolated dispute but part of an ongoing fraudulent enterprise." Dkt. # 25, at 10 (citing Dkt. # 1, ¶ 61). This is the sort of "bald assertion" that cannot support a finding of a continuing threat of harm. *See, e.g.*, *Luis v. Smith Partners & Assocs.*, 2012 WL 5077726, at *4 (N.D. Ill. Oct. 18, 2012) (holding that the

allegation that the defendants "behaved towards many other residents of many other properties acquired in [the purported scheme] in a manner similar to the manner in which they . . . behaved towards Plaintiffs" did not plead open-ended continuity, reasoning that "allegations that Defendants continue[d] to engage in racketeering activity [we]re vague and conclusory, involving unnamed victims and unspecified actions"); *Guar. Residential Lending*, 305 F. Supp. 2d at 860 ("Plaintiff conclusorily alleges that defendants' conduct represented a regular way of doing business and a threat of continued conduct. Such conclusory allegations, however, are not sufficient to allege open-ended continuity, [as] specific facts must support such a conclusion."); *Johnson Controls, Inc. v. Exide Corp.*, 132 F. Supp. 2d 654, 661 (N.D. Ill. 2001) (noting that "the absence of anything other than a conclusory suggestion of such a continuing threat on [the defendant's] part dooms the RICO claim"). FBSF has failed to allege open-ended continuity.

FBSF fares no better as to close-ended continuity. A closed-ended theory of continuity involves a course of criminal conduct that has ended "but endured for such a substantial period of time 'that the duration and repetition of the criminal activity carries with it an implicit threat of continued criminal activity in the future.'" *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 473 (7th Cir. 2007) (quoting *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1022–23 (7th Cir. 1992)). "The question for a closed-ended series of conduct is whether there were enough predicate acts over a finite time to support the conclusion that the criminal behavior would continue." *Webb v.*

*Quintairos, Prieto, Wood & Boyer, P.A.*, 2025 WL 843400, at *10 (N.D. Ill. 2025). The focus is on "the number and variety of predicate acts, the length of time over which they were committed, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries." *Menzies v. Seyfarth Shaw Ltd. Liab. P'ship*, 943 F.3d 328, 342 (7th Cir. 2019) (quoting *Vicom*, 20 F.3d at 780). The analysis is whether the complaint adequately "alleged enough, quantitatively and qualitatively, to show a qualifying pattern of racketeering activity" and no one factor is dispositive. *Id.*.

"Perhaps the most important element of RICO continuity is its temporal aspect." *Roger Whitmore's Auto. Servs.*, 424 F.3d at 673. Although there is no "bright-line rule for how long a closed period must be to satisfy continuity," the Seventh Circuit "ha[s] not hesitated to find that closed periods of several months to several years did not qualify as 'substantial' enough to satisfy continuity." *Id.* Here, FBSF specifically alleges that the conduct only occurred between the summer of 2025 through December 2025. Additionally, a "fairly small number of predicate acts cuts against showing continuity, particularly when a large proportion of the acts involve[] wire or mail fraud, neither of which are favored means of establishing a RICO pattern" in the Seventh Circuit. *Id.*

The complaint focuses almost exclusively on one victim, FBSF, which cuts against finding closed-ended continuity. *See Jennings*, 495 F.3d at 475 (holding that closed-ended continuity was not present where the plaintiff was "the only identifiable individual who has suffered any potential injury."). Although a RICO pattern may be

established on the basis of a single scheme, "it is not irrelevant, in analyzing the continuity requirement, that there is only one scheme." *Sutherland v. O'Malley*, 882 F.2d 1196, 1204 (7th Cir. 1989) (citing *H.J. Inc.*, 492 U.S. at 240); *United States Textiles, Inc. v. Anheuser-Busch Cos.*, 911 F.2d 1261, 1269 (7th Cir. 1990). Even counting FBSF's vague allegations of similar misconduct with Suncoast Funding, the complaint would still identify only "a small group" harmed by the scheme, which is likewise insufficient. *Roger Witmore's Auto. Servs.*, 424 F.3d at 673 (holding that there was no closed-ended continuity where the plaintiff identified a "dozen or so" victims).

Additionally, the complaint identifies only one set of injuries (FBSF's) with any degree of specificity. *See Jennings*, 495 F.3d at 476 (holding that there was no closed-ended continuity where the plaintiff suffered the only identifiable injuries); *Lipin Enters. Inc. v. Lee*, 803 F.2d 322, 324 (7th Cir. 1986) ("There must be some indication of a threat of continuing activity by the defendants, not just one instance of fraud with a single victim.") (internal quotation marks omitted)). Again, even considering the complaint's cursory references to Suncoast Funding, two sets of injuries remain insufficient for closed-ended continuity, especially because FBSF does not sufficiently allege that any victim is suffering continuing harms. *See Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 662–63 (7th Cir. 1992) (holding that the plaintiffs failed to state a RICO claim even though the defendants' alleged scheme injured more than one victim); *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) (holding that the plaintiffs did not satisfy closed-ended continuity

where they alleged a "single scheme" against "a small number of victims," adding that it was "virtually impossible for plaintiffs to state a RICO claim" based on such allegations).

In short, the duration, number, and variety of predicate acts alleged are minimal, as are the number of victims, schemes, and distinct injuries. These factors all weigh against finding a pattern of racketeering activity. Courts often caution plaintiffs that not every fraudulent scheme gives rise to a RICO claim, and the Court does so again here. *See Jennings*, 495 F.3d at 472 (RICO "was never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions"); *Wankel v. S. Ill. Bancorp, Inc.*, 2007 WL 2410328, at *10 (N.D. Ill. 2007) (dismissing RICO claims that alleged a fraudulent loan scheme and noting that "it seems that Plaintiffs' cause of action constitutes precisely what the Supreme Court and Seventh Circuit courts hope to forestall: 'RICO's use against isolated or sporadic criminal activity [such that] RICO [becomes] a surrogate for garden-variety fraud actions properly brought under state law'" (alterations in original) (citation omitted)). FBSF's complaint, in its current form, is simply an attempt to "shoehorn a state-law fraud claim into a civil RICO claim." *Menzies*, 943 F.3d at 342. The civil RICO claim is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [21] is granted in part and denied in part as set forth above. FBSF may file an amended complaint by 9/22/2026. A telephonic status hearing is set for 10/27/2026 at 9:50 a.m.

It is so ordered.

Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Date: August 31, 2026